Green Appeal.

Argued April 25, 1972. Before JONES, C. J., EAGEN, O'BRIEN, ROBERTS, POMEROY, NIX and MANDERINO, JJ.

*Elliott B. Platt,* for appellant.

*Michael Minkin,* Assistant Attorney General, with him *Dante Mattioni,* Deputy Attorney General, and *J. Shane Creamer,* Attorney General, for appellee.

OPINION BY MR. CHIEF JUSTICE JONES, July 2, 1973:

Ricky Ricardo Green (Ricky), the son of separated parents, Nathaniel and Ruth Green, was born on September 10, 1955, and has had two attacks of poliomyelitis, causing problems of obesity. In addition, Ricky now suffers from paralytic scoliosis (94% curvature of the spine). Ricky's mother, with whom he lives, consented to a recommended "spinal fusion" to relieve Ricky's bent position but since she is a Jehovah's Witness, refused to consent to any blood transfusions which are necessary for surgery. This caused the Director of the State Hospital for Crippled Children at Elizabethtown, Pennsylvania, to file a "petition to initiate juvenile proceedings"[1] seeking to have Ricky declared a "neglected child" and himself appointed guardian so that he could consent to the transfusions.

The Court of Common Pleas, Family Court Division, Juvenile Branch, of Philadelphia dismissed the petition, following an evidentiary hearing. The Superior Court unanimously reversed and remanded the matter for the appointment of a guardian. *Green Case,* 220 Pa. Superior Ct. 191, 286 A. 2d 681 (1970). We granted allocatur.

---

[1] This action was taken pursuant to the Juvenile Court Law, Act of June 2, 1933, P. L. 1433, §1 *et seq., as amended,* 11 P.S. §243 *et seq.*

In an opinion filed on June 28, 1972, *Green Appeal,* 448 Pa. 338, 292 A. 2d 387 (1972),[2] we recognized that although the operation would be beneficial, Ricky's life was not immediately imperiled by his physical condition. Therefore, as between Ricky's mother and the state, the state did not have an interest of sufficient magnitude to outweigh the parent's religious belief. We went further, however, in that in our view the ultimate question was "whether a parent's religious beliefs are paramount to the possibly adverse decision of the child." Since the record at that time gave no indication of Ricky's thinking, we reversed the Superior Court's order and remanded the matter to the lower court so that an evidentiary hearing could be held, at which time Ricky's wishes could be ascertained. Meanwhile we retained our jurisdiction.

On March 28, 1973, an evidentiary hearing was held. The hearing judge found the following:

"Ricky is a good looking young man of seventeen with a pleasant facial expression. He appeared a little overweight but not obese at this time. He sat erect in his wheelchair without visible appearance of the curvature of his spine. He is in the tenth grade at Widener School and hopes to graduate in June, 1975.

"He answered all questions without hesitation and appeared to understand the benefit he might receive from the operation and the possible complications if he did not have it. In view of all the testimony, it is clear that he does not wish to have this operation." In addition, a review of the notes of testimony of the evidentiary hearing discloses that Ricky's decision was not based solely on religious grounds. He also stated that he had been in the hospital a long time already, and that no one "says it is going to come out right."

---

[2] Mr. Justice EAGEN filed a dissenting opinion, in which Mr. Justice ROBERTS and Mr. Justice POMEROY joined.

We find, therefore, that under the circumstances, the Director's petition was properly dismissed since Ricky was not a "neglected child" within the meaning of the Juvenile Court Law.

The order of the Superior Court is reversed and the order of the Court of Common Pleas, Family Court Division, Juvenile Branch, of Philadelphia is affirmed.

Mr. Justice EAGEN, Mr. Justice ROBERTS and Mr. Justice POMEROY dissent.